Good morning. May it please the Court. And you are Mr. Hanson? My name is Adam Hanson. You may proceed, sir. Thank you. And, Judge Woolman, you did pronounce it right. It is Mr. Gorog, Chris Gorog. Okay. The District Court made two mistakes in this case that require reversal. The first is, the first mistake is the District Court misinterpreted the party's contract. The second mistake, which is related, is that the District Court misapplied Federal Rule of Civil Procedure 12. I want to start with the contract. Mr. Gorog was the owner of a company called Napster. And the first question I always get, and I want to anticipate this, is, no, Mr. Gorog is not Sean Fanning. He is not the character who was played by Justin Timberlake in the movie The Social Network. Napster had some very well-publicized troubles with copyright infringement. Mr. Gorog purchased the company out of bankruptcy and turned it into a legal fee-for-service, a music-sharing service. The relevant facts start with Mr. Gorog's sale of Napster to Best Buy. And that was a very widely publicized deal in 2008, where Mr. Gorog and other executives of Napster became employees of Best Buy. And the idea was to combine the two companies to leverage Napster and to grow it into a larger and more successful music-sharing service. Unfortunately, given the internal politics of Best Buy, it didn't work out that way. The Napster executives, including Mr. Gorog, went a separate way. And that was an entirely amicable breakup. But it gave rise to the issue in this case, which is the entitlement Mr. Gorog has to compensation based on the contractual terms of the two contractual agreements that govern this case. So the first contractual agreement is what the parties have been referring to as an award agreement. And the crux of the issue really has to do with four acceleration forfeiture provisions in the agreement. There's a lump of money that the Napster executives could earn based on a complex formula that's really not at issue in this case. But there are four provisions that, if triggered, could result in either receiving all of that money or receiving none of that money. And the crux of the mistake that the district court made in this case is to interpret those provisions to be mutually exclusive, when the provisions simply don't state that they must be mutually exclusive. Now, you say mutually exclusive. I thought that the way they were interpreted, mutually exclusive, is not quite the right term. The right term would be interpret them all together, looking at four of them and interpreting them together. Tell me where we're miscommunicating. I don't think we're miscommunicating. I think that the district court, of course, must interpret the terms together. But the district court must also interpret the terms according to their plain and ordinary meaning. And if you look at the facts as they unfolded in this case, we've got a scenario where Mr. Garag left the company without cause, so that is in bucket B, and then you've got the sale of Napster later on, which is bucket C. And so, in order to reach the result that the district court reached, you've got to conclude that once you're in bucket B, then you can never be in bucket C. And in order to reach that conclusion, you've got to assume, or hold, rather, that in order to invoke provision C involving the sale of the company, that you would have to still be employed there. In other words, Mr. Garag would have to sit in his office at Best Buy and remain employed. We're getting to this very early, but you and I are communicating. What about bucket D, where it says, any other reason? If your employment is terminated for any other reason, your rights to any benefit, any award, are over. Absolutely. Now, why didn't that trump everything in this case? Sure. Well, there's two reasons why it didn't trump everything. First, the second provision, which I didn't get to, but the second provision that's relevant here is the severance agreement, which was signed a year later. The severance agreement specifically says that Mr. Garag is leaving Best Buy on good terms. In other words, we are invoking bucket B, not bucket D. So, that's why, as a factual matter, D doesn't govern. As an interpretive matter Is this the waiver and release general release form? Yes, it is. Okay, good. Where in that does it say what you just said? Sorry, I didn't mark it ahead of time. I have the document. I didn't mark it ahead of time. It does say in the waiver, I don't have the exact pin site in front of me, but I can represent to the court with confidence that in the waiver it says that Mr. Garag's employment is being terminated without cause, which is the language of section 2.4B. But to go deeper and to answer your question and to communicate further, the interpretive relevance of 2.4D is really relevant because it says if you're terminated for any other reason, no award, now or ever in the future. So, you've got this scenario, you know, Best Buy has raised this specter of, oh, wouldn't it be absurd if, you know, Mr. Garag committed some sort of heinous crime and was sent to prison and then later the unit was sold and he'd be entitled to this payment. Nothing of the sort would ever happen. If you're in 2.4D land, it's truly over. Now, what's so interesting is Best Buy could have written this contract to put a similar provision in 2.4B, right? They could have said, well, if you're terminated without cause, you can get this prorated amount, you can get anything that's earned under the formula, but you can never earn anything under 2.4C. That's off the table. They didn't do that. That goes to the heart of where the district court misinterpreted this agreement. There are several ways, and we spelled them out in our briefs, where you could add different terms to this agreement to basically effectuate the result that Best Buy is asking this court to affirm, which is to say you could change 2.4B to say if you are still employed at Best Buy and by reason of Best Buy's sale or cessation of operations of Napster, you are no longer employed, then this will happen. That would have, we wouldn't be standing here today, we wouldn't be having this dispute if that were in there. Another way to get at it, and there's always more than one way to skin the cat, you could say these provisions, A, B, C, and D, are in fact mutually exclusive. You cannot invoke relief under more than one category. Once you've invoked relief or put yourself in one of the buckets, you cannot invoke any relief. The problem is the parties didn't do that. We've got the plan language here. Subsection A refers to terminated for a certain reason, either dead or you become disabled, that's right. Subsection B refers to termination without cause. Now, did he collect under B? Because he would have been entitled to some pro rata share. There was no collection under B for a variety of reasons. The majority factual reason was he was never there long enough. The way the performance schedule was set up was you had to be there and then there would be a benchmark date where the data would be analyzed and Why couldn't he collect a something under B? It says pro rata. Tell me if I don't get it. He could, in theory, collect something under B. Yeah, surely. He could, in theory, collect something under B. The mistake in this case isn't to say that he couldn't collect something under B. The mistake in this case is to say that B and exclusively B is the only vehicle that he can ride in. And I would submit it simply amounts to rewriting this contract to the benefit of Best Buy, which is something they wrote this contract, not in front of the district court. But don't you think your position has to be that he can collect under B and C? No, it isn't. Our position is that he collects under C. And let me address that. Based on the facts, don't you think he collects something under B? I know it's the same question I just asked, but I'll ask it again. Sure. Let me try to answer that. He collects under C. The district court accused us of trying to improperly combine B and C. And I think that's a strawman argument, and I think that's your question, and I want to address that. The provision he would be collecting under is C. But there is the severance agreement. And the severance agreement says that anything he collects is going to be prorated over this March 2009 to March 2014 period. Now, this bleeds over a little bit into the procedural arguments that we're making. Part of the reason that we drafted the complaint the way we did is because we didn't have this award provision in front of us. What we had was a very early draft that was significantly different in several major respects than this one. And that's part of the reason why it's proper in this case to conduct some limited discovery so we can get the evidence on the table and make coherent arguments about what the contract actually says and how the court should come out. But... Counsel, again, in the waiver and general release, is the term prorated in that? It's in the exhibit, Your Honor. So there's, I believe, just one exhibit, Exhibit A, and it's... So that's where it is. It's not in the text of the waiver and general release. That's right. Tell me if I'm talking about the wrong thing. No, you're talking about the correct thing. And that was Exhibit what again? So the waiver and general release is a very short document, and then it incorporates by reference Exhibit A, which is Exhibit A to the actual release. And then Exhibit A mentions... It does mention prorated. That's right. I don't want to beat it at a horse. I don't understand why you say B and C are mutually exclusive. I could foresee a scenario where the company is so successful, he meets performance, and then they decide to terminate him without cause because they're going to sell the company for a big profit. And he would get both the prorata, and then he would get what he's entitled to on a sale. I don't understand why they're necessarily mutually exclusive. I'm in complete agreement. My position is that they're not mutually exclusive. Well, I thought you had answered Judge Benton's question. You said it had to be either or. I understood Judge Benton's question to be a slightly different question. Okay. I agree 100% with the point that you just made, so let me be clear about that. I understood Judge Benton's question to be whether B, by its own force, would automatically prorate any amount that was earned under Bucket C. That's not our argument. Our argument is that he's entitled to the full amount, but quite frankly, in crafting these pleadings, you've got to make the pleading work for how the judge is going to potentially interpret these things. So, what I've said in my brief about this issue of prorating is this is really an issue of damages. I think the question should be framed as this. Does the severance agreement mandate that any award he receives under Bucket C be prorated in that March 09 through March 14 time period? And Best Buy, evidently, would have preferred if we'd put two counts in the prorating. That's splitting hairs from a procedural requirement, and that's where we get over to the second point. Under this original agreement, do you think that there's just one performance award, or can there be performance awards plural? I believe there is one operative performance award, and this is really the ultimate point I would like to make on the procedure is we didn't have that when we drafted the complaint. We had a draft. There are multiple drafts. One thing that's interesting is in the version that the court has, which is what Best Buy has essentially represented as the ultimate version, if that's true, I don't know. I would like to take a deposition and find out if it's the ultimate version, but what they've represented has a different time period in it. It's got a different definition of performance target date, and it's one of these issues where it may be helpful for the purpose of extrinsic evidence or parole evidence or certainly the intent of the parties to get some basic discovery to look at how these drafts moved along to get to what we hopefully will agree is the final version and then make some coherent arguments about how it all works. Are we looking at a moving target here? Well, we are. I mean, there's a reason that we don't do judgment law on horseback like we did in this case. I mean, the federal rules of civil procedure don't allow you to simply respond to a complaint by stapling 300 pages of evidence which you believe supports your rule in my favor. That's the record we have in this case. And, you know, I'm not doubting the veracity of anything Best Buy attached. I don't think discovery would be particularly burdensome in this case. But, you know, the way it works, the way it should work, that it didn't work in this case under federal rules of civil procedure 8 and 16 is I draft a complaint. It's a very plain and simple statement of the facts and the claims for summary judgment motion. It certainly shouldn't be a trial on paper. They respond or, you know, a motion to dismiss is appropriate if the complaint is facially invalid, but that's not the case here. Their defenses are mostly based on evidence. And we figure out what's what, we build the record, and we take it to the judge for our decision. So everyone feels like they got a fair hearing. I see that I've gone past the time I'd like to reserve for rebuttal, so I will sit down. Thank you. Very well. Ms. Anthony, you may proceed. Good morning. May it please the Court. Counsel, my name is Brooke Anthony. I represent Best Buy and exclusive. And when you read those provisions, giving meaning to all the words in harmony with each other and the rest of the contract, appellant is entitled to payment under 2.4 B and 2.4 B only. Now, the district court reached this conclusion for three main reasons. The first is the plain language of the statute. Sorry, the contract. This was an incentive agreement. By its plain terms, it entitled appellant to earn the right to a performance award if Napster met certain performance criteria. And as long as he remained employed at Napster and Napster met those criteria, he would be compensated in the form of a performance award. C doesn't say, though, as long as you stay employed. That is correct. The word terminated does not appear in C. Or prior to the, you know, go ahead, proceed. Yes. And your Honor raises a good point. 2.4 actually was the party's intention to prepare for and anticipate all the possible ways that Best Buy's relationship with appellant could end. So it's important to remember that appellant was actually employed with Napster. He was not employed with Best Buy. But the incentive agreement was with Best Buy, not with Napster. And there were only so many ways that his relationship with Best Buy could terminate. And those were he could die or become disabled. That was 2.4 A. He could be terminated without cause or working at Napster when Best Buy sold the company such that he would remain employed with Napster, but his relationship with Best Buy would be terminated. That was 2.4 C. Or he could be terminated for any other reason. And that's the language and the plain language of the contract that the court grabbed onto. The word other was critically important. Because if you read the provisions of 2.4 as anything other than mutually exclusive, you render 2.4 D meaningless. Well, Best Buy has taken the position that the intent of the contract is performance only. To me that, now we're starting to get into summary judgment area, and I think that then maybe would open it up to some discovery. But as I read it, you can also argue that it was also done for the protection of the employee because it says if the venture ceases operations, he gets it. So I could see that as the employee saying, well, you know, maybe Best Buy will buy this company and they'll decide it isn't worth putting money into, which I think is what happened. And they'll just give up. I can give my best efforts. I can give 180%. But if Best Buy doesn't want to support it, that's their decision. They had that right. Then I get the performance. And I think Your Honor is reading it correctly, provided that appellant remained employed at Napster at the time that sale occurred. But what happened? Why is it doesn't say that? Because if Best Buy decides they're going to let Napster wither on the vine and die, it would make sense that they're going to start to lay off the employees. And what if they lay off, Mr. Gord? They say, we're going to let it go out of business. It was a bad move. We're going to terminate them without cause 90 days before we cease operations. See? You get nothing. They could do that, you're saying. Technically, under the terms of the agreement, they could do that. Now, I want to address Why? Where does it say that? Well, two places, Your Honor. First of all, in 2.4D, if you read it that you could be paid under 2.4B and 2.4C, then 2.4D would be meaningless. But the other reason that the district court last time Why can't you read 2.4D just to reply to for cause termination? You're horrible of horribles of stealing from the company and going to prison. Why can't that be Why can't C and B be without cause, D be with cause? D certainly does apply to with cause terminations, but the language For the horrible of horribles is going to apply But the language in 2.4D that is critically important is the any other reason, because when you say other than what, other than 2.4A, 2.4B, or 2.4C, if you apply 2.4D to A and B, but not to C, then you haven't read all the provisions in harmony with each other and given meaning to all the words in the provision. So think, for example, if you were to try to read 2.4A with 2.4C. Under that reading, if appellant had died, he'd be entitled to 100%. Well, what about the situation where Best Buy just says, we don't want to support Napster anymore. It wasn't a good acquisition. We're going to either lay off the employees or they're going to be sitting at their computer playing solitaire all day and they're going to leave. And then eventually the company ceases operation. They get nothing in that case. Is your position. Yes. 2.4C is what I would call a sweat equity provision. It's intended to have both parties give their best efforts to make Napster a success. And as long as appellant is still working at Napster at the time the sale occurs. Well, did Best Buy give its best efforts to keep it operational and put money and time and effort into it? Well, there's nothing in the record before us on that. Is that their point? There isn't anything in the record. Well, but that isn't. You said it's sweat equity. Both parties have to give it their very best effort. The idea being that if appellant is still working at the company and, for example, they sell it for a loss, then appellant would be rewarded for his dedication and loyalty to the company. If he's still working at the company and Best Buy were to sell it for a huge profit, 2.4C says you're going to get an additional performance award because you were still working at the company. What about the phrase cease operations? What if they just let it die? Well, that's sort of the same thing as if they sold it for a loss. I mean, it's still the sweat equity provision there. But I'm still having trouble with what if they just let it die and they just terminate all the employees or they just kind of wither away over the course of a couple years because they're not supporting it anymore and through no fault of theirs, the company dies and they're not there on the date it dies, but they're there 60 days before or six months before. That's a very different factual scenario than what we have here, Your Honor, and I can't speak to what the analysis would be under that case. In this case, Appellant left his employment nine months after he started, and two years later, two years after he stopped using his best efforts to make Napster a success, he heard on the news that Best Buy had sold some assets of the company. He admits that he's entitled to payment under 2.4B, and I want to just touch briefly on the waiver and general release because that document is actually at Appendix 43, and the exhibit makes it very clear that what Appellant is entitled to is a prorated portion of a performance award. Okay, prorate is not in the waiver and general release. No, it's in Exhibit A. Okay, by the way, I found Exhibit A since the other counsel is up. It's Appendix 47. Yeah, yeah, but go down to Exhibit A with me. Yep, and what's important is Footnote 4, which says the rights under Section 2 of the Performance Award Agreement shall be determined in accordance with the terms of the Performance Award Agreement. The same thing, does it? That's called a tautology, I think, right? Yes. Okay, proceed. So when you look at, for example, the provisions in 2.4, the only place where the words prorated appear at all are 2.4B, and the district court did note that if you try to put the words prorated onto the other provisions, you can't do that because you can't put the words prorated onto 2.4D, for example, where you'd be entitled to no performance award under the agreement. Well, counsel, you can prorate a prorated amount. You follow what I'm saying? And you can prorate anything. You could prorate anything. It's a relatively meaningless term in finance and accounting. Yes, and I believe that the language in Exhibit A shows that appellant understood when he signed the waiver and general release he was entitled to the prorated portion as anticipated by 2.4B. What he's now asking for is 100% of an award. But Exhibit A stops at 4. It says 9.5.2.4 in the agreement section cited. It doesn't cite B or D or even C. You know what I'm saying in Exhibit A? Yes. So why isn't that an indication of what's going on here? Well, it doesn't cite the specific provision, but it does refer back to this particular award, the performance award agreement, and Section 2 of that agreement, which includes the forfeiture and acceleration provisions. A different question. Do you think there's one performance award under this original agreement or not? Do you think there are one or two or it can be multiple? There's one performance award agreement and significantly... an award. The performance award, is there one performance award or are there the possibility of two, three, or four performance awards? There is one performance award target amount, four different dates. No, counsel. Performance award is defined. It says collectively the performance award, and you're familiar with the third line of the agreement. Do you think there's just one under this agreement or do you think there's more than one performance award? There's just one performance award paid out at four different dates if performance criteria are met. Now, I want to go back to reading these different provisions together because if you read 2.4a and 2.4c together, I think that further demonstrates the harsh and absurd results that could be reached by reading these as anything other than mutually exclusive. So if, for example, a palant were to die, he would receive 100% under 2.4a. And if Best Buy were to then sell the company, whether it's three months, six months, two years later, by the reading that you can read these together, a palant would be compensated 200% for dying. Two awards, right? Two awards. So you think there can just be one award? There's just one award. There's one target amount and one award. It's just analyzed at different target dates and paid at different target dates. So under that reading, he'd be compensated twice. And the law says you can look at the unambiguous terms of the contract and interpret it not only in harmony with each other but also considering the overall purpose of the contract. And I understand Your Honor's concerned about that, opening it up to some outside contractual analysis, but the language of the contract specifically says this was the incentive award agreement and it granted a palant the right to earn. This wasn't necessarily an award agreement that was intended to hold Best Buy to any sort of requirement. And, in fact, if they intended to make the sale and cessation of sale obligation in 2.4C an independent obligation, they could have pulled it out of 2.4B altogether, and then it wouldn't have been impacted by the modification of the word other in 2.4D. Would you agree that for purposes of the motion to dismiss, we can only consider the four corners of the contract? Because you made a lot of arguments about, well, it wasn't really a sale. I mean, none of that is before us, right? That is true, Your Honor. So all we can look at is the four corners of the contract. The complaint and the three agreements that were embraced by the complaint and the four corners of those agreements, yes. And just to briefly address the idea that this is the first time we've seen the performance award agreement, I had not heard before today that the original agreement they used to draft the complaint was a draft. That was never mentioned in front of the district court, and the district court actually dropped a footnote that the agreement is embraced. There's been no argument that the terms are different than the agreement that this court is considering, and I don't believe that argument was in the briefs either. So the terms that appellant cited in his first amended complaint are identical to the terms that are in the performance award agreement that was embraced by the complaint and cited by Best Buy. So if Your Honor said nothing further, I think I'm done. One question. There was a prior employment agreement in September? Yes. Now, is that embraced? When you answer the question about what we're going to look at, is that prior employment agreement, is that included? It is, Your Honor. The district court considered the employment agreement, the performance award agreement, and the waiver and general release. And Exhibit A. Yes, that's attached to the waiver and general release. Exhibit A and Exhibit A. Those three documents were cited, referenced by name, and cited in the complaint, and the performance award agreement forms the basis for appellant's claim. So the court determined those were evidently embraced. With respect to the remaining documents in the record, which I understand appellant is now claiming should require this to go back down and be converted to summary judgment and allow for discovery, those were not considered by the district court. And as this court is aware, the district court need not convert a motion to dismiss into one for summary judgment unless it considers matters outside the pleading. That was not done here. So you're reading this Exhibit A and the performance award to mean that he started in March of 2009, he left in December 31 of 2009, and so he should get, what would that be, nine months of a period totaling about five and a half years? Yes, as long as the award continued for that period, yes. And as long as Napster met the performance criteria during that period, he would receive a prorated portion for the nine whole months that he was employed over the total amount of the performance period being analyzed. That should be about 57 months, it looks like, something like that. In total, yes, something like that. The district court correctly found that these provisions were mutually exclusive. To read any other way would lead to harsh and absurd results and would render other terms in the contract meaningless. That decision should be affirmed and Appellant's complaint should be dismissed. Thank you. Very well, thank you. Just as an administrative matter, Judge Benton, it sounds like you probably found the pin sets you were looking for, but the without cause language is Appendix 43, the 13th line of that page, and the Exhibit A is? Tell me which line you just said. I don't want to take it. Line 13. Line 13, thank you. And the Exhibit A is Appendix 47. Yes, I found it. Go ahead, proceed. To correct one point that counsel made with respect to the two or more competing performance agreements, the biggest difference is the period. The one that we were basing the complaint off of was through 2012, which is why the complaint says through 2012. And then you've got this severance that says through 2014. The award agreement that Best Buy put into evidence says through 2014. And then if you go back and look at the way that we drafted our complaint, I think that explains the difference between the two. The last point, just with respect to the purpose of this contract, this was a provision, 2.4C, that was a seller provision that Napster and Mr. Garag insisted on putting in there to make sure that they would get the resources that they needed from Best Buy in order to make Napster successful and achieve this earn out. They didn't get it from Best Buy, and that entitles him to relief. Unless the Court has any further questions, I'd ask that the District Court be reversed and sent back for further proceedings. Thank you. Thank you. The argument's on both sides. The case is submitted. We will take it under submission.